**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KENNETH CRUTCHER** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:10-cv-316** |
| | ) | |
| | ) | **JUDGE HAYNES** |
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM

Before the Court is Movant Kenneth Crutcher's motion to vacate his sentence under 28 U.S.C. § 2255 (Docket Entry No. 1), to which the Government filed a response (Docket Entry No. 21), and Movant filed a reply (Docket Entry No. 42). Movant's claims are (1) ineffective assistance of counsel; (2) an indictment obtained with perjured grand jury testimony; (3) denial of Movant's Sixth Amendment right to counsel of his choice; (4) Movant's denial of his right to counsel during custodial interrogation; and (5) the Government's violation of <u>Brady</u>[1]. The Government responds that certain claims are procedurally defaulted and the remaining claims lack merit. Upon review of Movant's claims, the Court concludes that an evidentiary hearing is unnecessary. 28 U.S.C. § 2255; <u>Blanton v. United States</u>, 94 F.3d 227, 235 (6th Cir.1996).

### A. Procedural History

In October 2003, Movant was indicted in a fifteen defendant cocaine conspiracy distribution case with wiretap evidence. (Case No. 3:03cr205). Then United States District

---

[1] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

Judge Robert Echols authorized the wiretap and was the presiding judge in the action. On October 27, 2003, Movant was arrested and officers discovered a bag containing $164,705 in cash in Crutcher's vehicle, which Movant subsequently allegedly confessed he was taking to co-defendant Hernandez's associates. After a search warrant for Crutcher's house was executed, officers found two loaded handguns, a loaded shotgun, and an additional $23,300 in cash.

During the pre-trial proceedings, Movant was initially represented by attorney Edward Kindall. Shortly before the suppression hearing, Movant sought to substitute David Cooper for Kindall. Judge Echols denied the motion, but permitted Cooper to participate in the suppression hearing. On February 9, 2005, Movant was charged by third superseding indictment on counts involving conspiracy to distribute cocaine, possession with intent to distribute cocaine on three different dates, possession of a firearm in furtherance of drug trafficking, and possession of firearms by a previously convicted felon. Counsel for Movant filed or joined in several pre-trial motions, including motions to suppress Movant's alleged confession, the wiretap evidence, and the currency seized.

Movant and another defendant proceeded to trial on February 22, 2005. At the beginning of trial, Movant was represented by both Kindall and Cooper. Movant claims that Kindall was lead trial counsel, yet Cooper and Kindall claim Cooper was lead trial counsel. During the trial, Kindall became ill and was excused. According to Movant, Kindall disappeared without explanation. Movant was then represented solely by Cooper. At trial, the Government presented wiretap evidence, co-defendant testimony, and agent testimony regarding Movant's confession. On March 1, 2005, the jury convicted Movant of Counts One and Fifteen through Nineteen of the third superseding indictment On July 26, 2005, Movant was sentenced to life imprisonment on Counts One and Seventeen, 360 months imprisonment on Counts Fifteen,

2

Sixteen, and Nineteen, to all run concurrently, and 60 months imprisonment on Count Eighteen, to run consecutively to other counts. There was also a criminal forfeiture against Movant.

As relevant here, Movant filed a pro se appeal of the denial of his motion for new trial, which the Sixth Circuit denied. (Case No. 3:03cr205, Docket No. 1037, Unpublished Opinion dated January 5, 2010). Appellate counsel Kevin Schad appealed Movant's conviction and sentence, and Movant also filed a pro se brief, which the Sixth Circuit denied. United States v. Ogburn, 288 Fed.Appx. 226, 2008 WL 2906882, *1-3 (6th Cir. July 28, 2008).

## B. Findings of Fact

In affirming Movant's conviction and sentence, the Sixth Circuit summarized Movant's criminal case as follows:

> This case involves a major cocaine distribution conspiracy led by Andrez Miranda and involving Ogburn, Crutcher and fifteen other named defendants. Although most of the defendants pled guilty, Ogburn and Crutcher both pled not guilty and proceeded to a jury trial. Ogburn was found guilty of: (1) conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846; and (2) possession of 500 grams or more of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Crutcher was found guilty of: (1) conspiracy to distribute marijuana and five grams or more of cocaine in violation of 21 U.S.C. § 846; (2) three counts of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841; (4) possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c); and (5) being a felon in possession of firearms in violation of 18 U.S.C. § 922(g).

> * * *

> The facts relating to Crutcher are as follows. According to testimony at trial, Crutcher was first introduced to Miranda by Miguel Hernandez. Originally, Hernandez acted as a middle-man, purchasing cocaine from Miranda and then selling it to Crutcher. But Crutcher eventually began purchasing cocaine directly from Miranda and distributing it from a supply house. DEA wiretaps and surveillance eventually alerted agents to Crutcher's vehicle (a tan Suburban), which agents observed at the supply house.

> Crutcher was arrested on October 27, 2003 while driving the tan Suburban. In his vehicle, arresting officers discovered a bag containing $164,705 in cash which Crutcher said he was taking to "[Hernandez's] people." After a

search warrant for Crutcher's house was executed, officers found two loaded handguns, a loaded shotgun, and an additional $23,300 in cash.

Following his arrest, Crutcher came to the DEA office in Nashville where he was interviewed by DEA Agent Marti Roberts. At trial, Roberts testified that after Crutcher was given his Miranda warnings, he admitted that he intended to use the $164,705 to pay Hernandez for several kilograms of cocaine that Hernandez had provided Crutcher a few days earlier. Roberts further testified that Crutcher described purchasing cocaine from both Hernandez and Miranda and distributing the cocaine out of a supply house.

Prior to trial, Crutcher filed a pro se motion to suppress wiretap evidence and joined (along with Ogburn) another motion filed by other co-defendants to suppress the same evidence. Crutcher also filed a motion to suppress statements made to police following his arrest. After an evidentiary hearing on September 23, 2004, the district court denied each of these motions.

The government filed an information pursuant to 21 U.S.C. § 851 notifying Crutcher that it would seek a sentence enhancement based on Crutcher's three previous felony drug convictions in Tennessee state court.

At trial, co-defendants Adolpho Arrizon, Mickey Flinn, Wantaya Ford, Jaime Guzman, Ronald Petway, John Pillow, Brian Woodward, and Hernandez all testified as to their involvement with Miranda in the conspiracy. Seven of these co-defendants also testified as to their guilty pleas related to this conspiracy. Wiretap recordings and testimony from Hernandez, Arrizon, Agent Matt Bradford, and Roberts chronicled Crutcher's interactions with Miranda and his cocaine purchases from Hernandez and Miranda. Although Miranda did not testify, Roberts testified as to Miranda's guilty plea without objection. Following trial, a jury found Crutcher guilty on all counts.

*   *   *

After hearing testimony regarding the amount of drugs attributable to Crutcher and a number of Crutcher's arguments, the district court adopted the Guidelines range of 420 months to life as recommended in the PSR. But based upon the § 841(b) mandatory statutory enhancement, the district court sentenced Crutcher to a life-sentence with a 60-month consecutive sentence.

Ogburn, 2008 WL 2906882 at *1-3 (footnotes omitted).

Here, Movant contends his trial counsel rendered ineffective assistance by: (1) failing to file pre-trial motions; (2) failing to interview witnesses; (3) failing to seek recusal of the presiding judge; (4) failing to move for severance of the firearm charge; (5) stipulating to

4

Movant's prior felony conviction; (6) failing to challenge identification of Movant's voice on the wiretap recordings; and (7) failing to adequately prepare for trial and effectively cross-examine witnesses. Movant contends appellate counsel rendered ineffective counsel by failing to include requested issues and arguments in the appellate brief.

In response to Movant's § 2255 allegations, Kindall submitted his declaration stating, in pertinent part:

2. That during my representation of Mr. Crutcher, I visited with him on nine occasions at the Liethfield Kentucky Facility where he was housed.

3. That I filed a motion to suppress Mr. Crutcher's alleged confession given at the time of his arrest.

4. That I joined in several other motions filed by other attorneys and co-defendants with Mr. Crutcher.

5. That I participated as co-counsel with Attorney Cooper during the trial of the case until I become ill and was excused.

6. Mr. Crutcher at all times appeared to want total control of his case and would constantly request that I file motions that were in no way applicable to his case.

7. My recollection is that Mr. Crutcher would write letters and attempt to file documents on his own, against my advice.

8. I timely filed the necessary notice and petition regarding the civil forfeiture case. There were two conferences held with Judge Brown/Magistrate. At the time of the first conference, it was agreed that the civil matter would be deferred until the final resolution of the criminal seizure. A phone conference was held with Magistrate Brown and Assistant U.S. Attorney on Sept. 17, 2009. She advised that she was filing to seize the $164,705 seized in the criminal case. After a review by Judge Echols, it was ruled that all funds seized were subject to the criminal conviction.

9. Prior to my taking any further action, Mr. Crutcher informed me by letter and the court that I no longer represented him in this matter.

5

10.   As it relates to the civil seizure of two vehicles by Metro Police, I was able to negotiate the return of those vehicles to Mr. Crutcher.

11.   Finally, Mr. Crutcher was the most difficult client I have represented in my 30 years of practice. Although he was advised that the evidence against him was very strong and that co-defendants would probably testify against him, he was surprised when at least two c[o]-defendants did identify him during the trial as the one dealing drugs.

(Docket Entry No. 22, Attachment 1, Kindall Declaration).

In response to Movant's § 2255 allegations, Cooper also submitted his affidavit that provides, in pertinent part:

5.   As to one of the allegations in "Ground One" of the petition, Mr. Crutcher asserts that his attorneys did not challenge the "wiretap orders." A motion to suppress as to the electronic surveillance was filed on behalf of Mr. Crutcher on August 19, 2004. (Docket Entry No. 396). The motion requested permission, which was granted by the district court, to join in another more extensive motion and memorandum of law to suppress the fruits of electronic surveillance filed by co-defendants Guzman and Petway. (Docket Entry No. 361). The motion to suppress was later denied by the district court.

6.   As to the allegation that undersigned counsel failed to cross examine the government agents as to the identity of the caller on the recorded telephone calls, my recollection is there was extensive cross examination of all the officers as to their lack of knowledge as to the identity of Mr. Crutcher, or his voice on the wiretap telephone conversations. The objections at trial as to a lack of foundation appear to be shown by the trial transcripts filed by Mr. Crutcher and attached to his petition.

7.   Mr. Crutcher alleges that his defense attorneys failed to investigate the facts, or interview witnesses in the case. Without being more specific, undersigned counsel recalls numerous hours devoted to discussing the case with Mr. Crutcher, talking to him by phone, and going out to talk with potential witnesses in the case. Mr. Kindall and I went to interview Sam Burke at the request of Mr. Crutcher. I personally went out to view the arrest scene which was near a market to try and talk with any witnesses who might have recalled the incident. I went to the home of Mr. Crutcher to take photographs. I met with his wife Kim Crutcher on several occasions. The people and places were made known to me by either Mr. Crutcher, or from a review of the discovery material provided by the government.

8.    Another allegation is that undersigned counsel allowed the government to inform the jurors that Mr. Crutcher was "an ex-felon." Mr. Crutcher was charged with being a felon in possession of a firearm. Consistent with the Supreme Court case of <u>Old Chief v. United States</u>, 519 U.S. 172 (1997), I filed an offer to stipulate the felony conviction prior to trial. (Docket Entry No. 581). An amended offer to stipulate was filed on February 18, 2005. (Docket Entry No. 605).

9.    As to the allegation that Agent Roberts committed perjury before the grand jury, the prior testimony of all the agents was used in cross examination. Even though there may have been inconsistencies in Agent Roberts' prior testimony which I attempted to use at trial, I never observed any evidence in the case to support the proposition that Agent Roberts willfully committed perjury before the grand jury. I did not file any pleadings in that regard.

10.   Mr. Crutcher complains about ineffective assistance of counsel in the manner and method of cross examination of various government agents and witnesses. Undersigned counsel spent a lot of time in the general preparation of this case, and devoted a large number of hours as to the cross examination of all government witnesses. The total number of hours devoted to this case was over 130 hours.

11.   Mr. Crutcher complains that no objection was made to certain photographs. During the trial I objected to the introduction of photographs taken of evidence seized by the government at Mr. Crutcher's home, particularly the location of the guns in the bedroom of the house. The objection was denied by the district court.

12.   As stated earlier, there were motions to suppress filed on behalf of Mr. Crutcher which challenged not only the wiretap orders, but also statements that he made to law enforcement after his arrest. A motion to suppress statements made by Mr. Crutcher was filed on his behalf. (Docket Entry No. 290). Another motion to suppress (and memorandum of law) as to currency seized from Mr. Crutcher's vehicle was filed on his behalf. (Docket Entry No. 351 and 352). There was a separate motion filed on behalf of Mr. Crutcher to join a motion for bill particulars. (Docket Entry No. 389). The motions were all denied by the district court.

13.    I never made a statement to Mr. Crutcher that Mr. Kindall had "messed things up so bad that nothing could be done to correct it."

14.   In terms of cooperating with Mr. Kindall in the defense of Mr. Crutcher, undersigned counsel met with and talked with Mr. Kindall on numerous

occasions about the case and conducted witness interviews leading up to the trial.

15.     Mr. Crutcher complains in the petition about the failure to challenge the seizure of currency from his vehicle at the time of his arrest. As stated previously, a motion was filed to challenge the search and seizure of Mr. Crutcher's vehicle. The district court ruled against Mr. Crutcher.

16.     Mr. Crutcher complains about the failure of defense counsel to file a motion to sever the count of the indictment charging him with being a felon in possession of a firearm. Based on Sixth Circuit case law, there did not appear to be a legal or factual basis to file a motion to sever.

17.     Mr. Crutcher complains about the failure to request a dismissal of the count of the indictment charging him with a violation of 18 U.S.C. § 924. There did not appear to be a basis in law or fact to file such a motion, since the guns were found in Mr. Crutcher's house during the search of his home. Mr. Crutcher told me during a meeting on February 18, 2005 that he did not want his wife or son to testify at trial as to a possible ownership interest in any of the guns.

18.     During the trial, undersigned counsel does not recall the district judge ever handling the firearms, or causing any of the jurors to have to "'duck' behind the counter" as a result of handling the firearms.

19.     Mr. Crutcher complains about the ineffectiveness of the cross examination of witnesses at trial. Undersigned counsel cross examined every government agent to the best of his ability, and under the rules of evidence. Undersigned counsel attempted to draw out any inconsistencies in the witnesses testimony, and to try to distance Mr. Crutcher from the conspiracy.

20.     Mr. Crutcher complains about the jury knowing that he was arrested prior to trial. He complains of this relative to the questioning with Officer Mike Clark. The line of questioning was designed as part of the overall defense strategy that the police had simply arrested the wrong person, and that the person on the wiretap recordings was not Mr. Crutcher. It would seem reasonable for the jury to know that Mr. Crutcher had been arrested since he was under indictment and standing trial in federal court. I do not believe the jury was ever told that at the time of trial Mr. Crutcher was being held without a bond. Mr. Crutcher was dressed in civilian clothes during the trial.

21.     As to the testimony of Agent Roberts or Agent Bradford about Mr. Crutcher's voice on the wiretap recordings, undersigned counsel

challenged their testimony through cross examination as to a lack of foundation. The district court denied the motion and allowed the officers to testify.

22.     Mr. Crutcher complains that his statements to law enforcement should have been challenged as a part of a "proffer agreement" with the government. The statements by Mr. Crutcher to law enforcement were challenged by a motion to suppress, which was denied by the district court. To my knowledge, there was never any proffer session with the government to cover any of the statements made by Mr. Crutcher.

23.     Mr. Crutcher inquired about a recusal of the district judge since he also signed the wiretap orders. After researching the issue, undersigned counsel did not believe there was a legal or factual basis to file such a motion. I mailed Mr. Crutcher a letter dated December 10, 2004 to explain this, and cited the case of <u>United States v. Lawson</u>, 780 F.2d 535 (6th Cir. 1985).

24.     During the time that I represented Mr. Crutcher, he never expressed an interest in entering a plea of guilty, or attempting to negotiate a settlement. Mr. Crutcher always insisted that he was not guilty, and wanted to go to trial. Undersigned counsel never told Mr. Crutcher that he believed the "jurors reached the right verdict."

25.     Even though Mr. Crutcher did not express an interest to plead guilty, the government offered Mr. Crutcher a settlement agreement. In exchange for Mr. Crutcher's plea of guilty to Count 1 of the Second Superseding Indictment, the government said it would recommend a low-end guideline sentence in a range of between 262 and 327 months. The government's offer was contained in a letter dated December 3, 2004. The letter was mailed to Mr. Crutcher under cover letter dated December 7, 2004.

26.     On February 18, 2005, I met with Mr. Crutcher at the Grayson County jail. I explained to Mr. Crutcher that with his two (2) prior felony drug convictions, a finding of guilty under the facts of the case would in all likelihood cause a statutory life prison sentence. Mr. Crutcher still insisted that he wanted to go to trial.

(Docket Entry No. 21, Attachment 1, Cooper Affidavit).

As to Movant's claims about his appellate counsel, Shad filed his affidavit in response to

Movant's § 2255 allegations that provides, in pertinent part:

3.     That I had numerous phone conversations with the Movant during the course of appellate representation, and received many letters from the Movant. There was no problem with communication.

4.     That I did encourage the Movant to have input in the appellate process. I provided him with copy of all transcripts, and encouraged him to write me with issues he wanted included in the brief. I reviewed all of those letters/issues, and made decisions on what issues to raise in the brief based upon my review of the record, my legal research, and the input received from the Movant.

5.     That I provided a draft copy of the brief I intended to file to the Movant one month prior to filing it. The Movant was given full access and input: however, I made the final decisions, based upon my research, as to which issues to raise.

6.     Knowing that the Movant and I disagreed on which issues were viable for appeal, I asked the Sixth Circuit to allow the Movant to file a pro se brief. This was granted, and the Movant raised the issues he wanted in that brief, without interference from me.

7.     That in my professional opinion, the issues I raised in my brief were the strongest and most viable issues for appeal.

(Docket Entry No. 21, Attachment 2, Shad Declaration).

## C. Conclusions of Law

For relief under 28 U.S.C. § 2255, a movant must establish an error of constitutional magnitude which "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). The record must establish a fundamental defect or a complete miscarriage of justice to warrant relief. Reed v. Farley, 512 U.S. 339, 348 (1994). A § 2255 motion cannot challenge the claims presented on direct appeal absent exceptional circumstances or an intervening change in the law. Davis v. United States, 417 U.S. 333, 342 (1974). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual

'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998) (citations omitted).

### a.     Ineffective Assistance of Counsel

> The procedural default rule does not apply . . . to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. See United States v. Kincaide, 145 F.3d 771, 785 (6th Cir.1998); United States v. Tucker, 90 F.3d 1135, 1143 (6th Cir.1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. See Tucker, 90 F.3d at 1143; United States v. Allison, 59 F.3d 43, 47 (6th Cir.1995).

Gonzales v. United States, 1:05CV389, 2006 WL 3063400, *1 (W.D. Mich. Oct. 26, 2006).

To establish ineffective assistance of counsel, a movant must show: (1) that his counsel's performance fell below an objective standard of reasonableness and (2) that a "reasonable probability" exists that the performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-94 (1984). In reviewing counsel's performance, the Court must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." Id. at 689. Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of proceeding would have been different." Id. at 694.

"A determination of the prejudice prong of the Strickland analysis is necessarily dependent on a review of the merits of [Movant's] . . . claim." Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990). Thus, the Court considers the merits of the underlying claims giving rise to Movant's ineffective assistance of counsel allegations.

### (1) Trial counsel's failure to file pre-trial motions

Movant contends that trial counsel rendered ineffective assistance because "there were no motions filed, of any significance, by counsel," such as a motion to suppress currency and wiretap evidence. (Docket Entry No. 1). Yet, the record reflects that Movant's trial counsel filed motions, or joined in other co-defendants' motions, to suppress Movant's alleged confession, the currency seized during his arrest, and the wiretap evidence. The district court denied these motions. Thus, Movant's argument that trial counsel was ineffective for failing to file pre-trial motions lacks merit and does not constitute ineffective assistance of counsel.

### (2) Trial counsel's failure to interview witnesses

Movant contends that trial counsel rendered ineffective assistance by failing to conduct pre-trial interviews of witnesses identified by Movant, such as his co-defendants, employees of his place of employment, and failing to subpoena Sam Burke after conducting a pre-trial interview. Cooper responded:

> Without being more specific, undersigned counsel recalls numerous hours devoted to discussing the case with Mr. Crutcher, talking to him by phone, and going out to talk with potential witnesses in the case. Mr. Kindall and I went to interview Sam Burke at the request of Mr. Crutcher. I personally went out to view the arrest scene which was near a market to try and talk with any witnesses who might have recalled the incident. I went to the home of Mr. Crutcher to take photographs. I met with his wife Kim Crutcher on several occasions. The people and places were made known to me by either Mr. Crutcher, or from a review of the discovery material provided by the government.

(Docket Entry No. 21, Attachment 1).

Thus, the record reflects that trial counsel did interview witnesses in preparation for trial. Although trial counsel did not interview co-defendants as requested, there is nothing to suggest

that co-defendants' counsel would have permitted such interviews.  Moreover, Movant has not demonstrated prejudice.

### (3) Trial counsel's failure to seek recusal of the presiding judge

Movant contends that trial counsel rendered ineffective assistance by failing to seek recusal of the presiding judge based upon his prior approval of the wiretap application.[2]  Cooper responded that he did not seek recusal because he "did not believe there was a legal or factual basis to file such a motion" and notified Movant as such, citing United States v. Lawson, 780 F.2d 535 (6th Cir. 1985).  In Lawson, the Sixth Circuit held that a judge who originally authorized a wiretap was permitted to handle a suppression motion in the same action.  Id. at 540 (citing United States v. Murray, 762 F.2d 1013 (6th Cir. 1985) and Southerland v. Irons, 628 F.2d 978 (6th Cir.1980)).  Thus, trial counsel's decision not to seek recusal solely based on the presiding judge's prior authorization of the wiretap did not fall below an objective standard of reasonableness.

### (4) Trial counsel's failure to move for severance

Movant contends that trial counsel rendered ineffective assistance by failing to move for severance of the firearm count.  Cooper responded that this was a firm legal decision based upon applicable case precedent.

The Court concludes that Movant is attempting to argue that trial counsel erred by not filing a motion for improper joinder under Fed. R. Crim. P. 8(a).[3]  "Whether joinder was proper under Rule 8(a) is determined by the allegations on the face of the indictment."  United States v. Chavis, 296 F.3d 450, 456 (6th Cir. 2002).  Relating to joined firearm and drug charges, "[t]he

---

[2]  The Court notes that Movant filed a pro se document requesting recusal of the presiding judge.  (Case 3:03cr205, Docket Entry No. 559)

[3]  The Court notes that trial counsel filed a motion to sever Movant from other co-defendants (Docket Entry No. 532), which was denied.  (Docket Entry No. 557).

'tools of the trade' argument generally permits joinder only when the firearms charges and the drug charges are 'sufficiently connected temporally or logically to support the conclusion that the two crimes are part of the same transaction or plan,' as when guns are used in connection with the drug offense or when both guns and drugs are uncovered in the same search." Id. at 459 (citations omitted).

Here, the superseding indictment alleges that Movant possessed firearms in connection with trafficking of cocaine and marijuana. Moreover, the guns at issue were recovered from the Movant's residence on the day he was arrested with a large sum of currency in his vehicle, and Movant allegedly confessed that the currency was to be payment for narcotics. Therefore, trial counsel's failure to move for severance did not fall below an objective standard of reasonableness.

### (5) Trial counsel's stipulation to prior felony conviction

Movant contends that trial counsel rendered ineffective assistance by stipulating to his prior felony conviction. Cooper responded that this was a firm legal decision based upon applicable case precedent.

In Old Chief v. United States, 519 U.S. 172, 191 (1997), the Supreme Court held that the Government was required to accept a defendant's stipulation of a prior felony in a firearm count rather than presenting proof about the nature of the prior felony conviction because "risk of unfair prejudice did substantially outweigh the discounted probative value of the record of conviction." Thus, trial counsel's stipulation was reasonable and beneficial to Movant.

### (6) Trial counsel's failure to challenge voice identification

Movant contends that trial counsel rendered ineffective assistance by failing to challenge Movant's voice identification on the wiretap recording. However, a review of the record,

including the trial transcript portion submitted by Movant, demonstrates that trial counsel did

challenge Agent Bradford's voice identification of Movant:

> Q.    And when you heard him speak, did you reach any conclusion after
> hearing him speak?
>
> **MR. COOPER: Your honor, again, same objection. Lack of
> foundation. Qualification of this witness.**
>
> THE COURT: Well, again, he's talking about techniques used to identify
> his voice.
>
> You'll have a chance to cross examine him, but I overrule the objection.

(Docket Entry No. 1, Attachment 1, at 1) (emphasis added). Thus, Movant's argument

lacks merit and does not constitute ineffective assistance of counsel.

### (7) Trial counsel's failure to adequately prepare for trial

Movant contends that trial counsel rendered ineffective counsel by not adequately

preparing for trial and not effectively cross-examining witnesses. The Court concludes that such

allegations are not supported by the record.

Movant also alleges Kindall made unfilled promises in the opening statement regarding

proof of source of seized currency causing disfavor when such proof was not offered due to

Kindall's departure, citing Davis v. Straub, 421 F.3d 365, 373 (6th Cir. 2005), overruled by 430

F.3d 281 (6th Cir. 2005).

Here, the Court need not decide whether alleged "unfulfilled promises" would satisfy the

first Strickland factor because Movant has not satisfied the second Strickland factor. That is,

Movant has not demonstrated that the result would have been different but for the opening

statement.

**(8) Appellate counsel's failure to include requested issues and arguments**

Movant contends appellate counsel rendered ineffective assistance by failing to include issues and arguments requested by Movant in the appellate brief. In his affidavit, Shad explained his rationale for selecting appellate issues.

"[A]n attorney's failure to present a nonmeritorious issue on appeal does not constitute ineffective assistance of counsel." Mitchell v. Stegall, 2002 WL 31875529, *6 (E.D. Mich. Nov. 25, 2002) (citing Daniel v. Overton, 845 F.Supp. 1170, 1176 (E.D.Mich.1994)). The Sixth Circuit has outlined the following factors to consider in determining the reasonableness of appellate counsel's conduct:

    A.    Were the omitted issues "significant and obvious?"

    B.    Was there arguably contrary authority on the omitted issues?

    C.    Were the omitted issues clearly stronger than those presented?

    D.    Were the omitted issues objected to at trial?

    E.    Were the trial court's rulings subject to deference on appeal?

    F.    Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

    G.    What was appellate counsel's level of experience and expertise?

    H.    Did the Movant and appellate counsel meet and go over possible issues?

    I.    Is there evidence that counsel reviewed all the facts?

    J.    Were the omitted issues dealt with in other assignments of error?

    K.    Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

Morris v. Warden, 2010 WL 4105518, * 8 (S.D. Ohio Sept. 10, 2010) (quoting Mapes v. Coyle, 171 F.3d 408, 427-28 (6th Cir.1999)).

Applying these factors, Shad, an experienced appellate attorney, spoke to Movant numerous times about the appeal. Shad appealed the issues he thought were most viable. In addition to counsel's appellate brief, Movant filed a pro se petition with "a number of additional grounds upon which the district court erred," which the Sixth Circuit declined to address. Ogburn, 2008 WL 2906882 at *10. The Court concludes that Shad's performance of his appellate duties did not fall below an objective standard of reasonableness.

### (9) Other contentions in brief

In his papers, Movant raises a number of other alleged inadequacies of trial counsel, such as failure to object to photographs, failure to seek dismissal of 18 U.S.C. § 924(c) charge, failure to engage in plea bargaining, and speedy trial rights violation. The Court concludes that these allegations lack merit as unsupported by the record or objectively reasonable legal decisions. Accordingly, Movant's remaining allegations do not constitute ineffective assistance of trial counsel.

### (10) Conclusion

Because the underlying claims to Movant's ineffective assistance allegations lack merit, Movant cannot show that that his counsel's performance fell below an objective standard of reasonableness. Moreover, Movant has not demonstrated that a reasonable probability exists that trial or appellate counsel's performance prejudiced his defense. Martin v. Mitchell, 280 F.3d 594, 606 (6th Cir. 2002) ("Thus, if Martin's underlying ineffective assistance of trial counsel arguments lack merit, he cannot show 'cause and prejudice' via ineffective assistance of

appellate counsel."). Therefore, habeas relief should be denied with respect to Movant's ineffective assistance of trial and appellate counsel claims.

### b.    Perjured Grand Jury Testimony

Movant contends that he is entitled to relief because the indictment was obtained through use of agent Marty Roberts' perjured testimony. The Government responds that this claim is procedurally defaulted because Movant did not raise it on direct appeal. On appeal of the order denying his motion for new trial, Movant's pro se brief alleged that the indictment was obtained with perjured testimony from agents Marty Robert and Matt Bradford. The Sixth Circuit affirmed the district court's order denying the motion for new trial, stating in pertinent part:

> Crutcher's claim that Agents Robert and Bradford presented false testimony to the grand jury does not meet the Barlow[4] factors. . . In any event, the Barlow standard requires that newly discovered evidence be material and not merely impeaching. **Finally, in light of the overwhelming evidence presented against Crutcher at trial, evidence of the agents' alleged perjured grand jury testimony is not likely to produce and acquittal if the case were retried.** The evidence at trial included wiretap tape recordings connecting Crutcher to the conspiracy, co-defendant Miguel Hernandez's testimony against Crutcher, and Crutcher's confession on the morning of his arrest.

(Case No. 3:03cr205, Docket No. 1037, Unpublished Opinion dated January 5, 2010) (emphasis added). "[A] § 2255 motion may not be employed to relitigate an issue that was raised and considered on appeal absent highly exceptional circumstances, such as an intervening change in law." Ushery v. United States, 149 F.3d 1185 (table), 1998 WL 384566 at *2 (6th Cir. June 18, 1998) (citations omitted). There are not any highly exceptional circumstances here to relitigate this claim in this action.

Moreover, here Movant was convicted by a jury and "any error by the prosecution before the grand jury, including the use of perjured testimony, is harmless where the defendant was

---

[4] United States v. Barlow, 693 F.2d 954 (6th Cir. 1982).

18

subsequently convicted by the petit jury." United States v. Thompson, No. 95-1272, 114 F.3d

1190 (table), 1997 WL 299359, *2 (6th Cir. June 4, 1997) (citing United States v. Cobleigh, 75

F.3d 242, 551 (6th Cir. 1996) (citing United States v. Mechanik, 475 U.S. 66, 71073 (1986)).

### c.  Denial of Sixth Amendment right to counsel of choice

Here, Movant argues he is entitled to habeas relief because he was denied his Sixth

Amendment right to counsel.  Specifically, Movant contends this constitutional violation

occurred when the presiding judge denied his motion to substitute counsel and Cooper became

sole counsel during trial.

On direct appeal, Movant argued that he was denied Sixth Amendment right to counsel

when the presiding judge denied his motion to substitute Cooper for Kendall during the

suppression hearing.  In holding that the district court did not abuse its discretion by denying

Movant's motion, the Sixth Circuit stated:

> First, Crutcher submitted his request to substitute counsel on the eve of a
> suppression hearing involving eighteen defendants . . . Second, after denying
> Kendall's motion and allowing Cooper to remain at the suppression hearing, the
> district court asked Crutcher his thoughts about this arrangement.  Crutcher
> answered "[i]t is fine." . . .Third, any conflict between Crutcher and Kindall does
> not appear to have caused a 'total lack of communication' preventing an adequate
> defense. . .  Instead, Crutcher merely had two attorneys present at the suppression
> hearing.

(Case No. 3:03cr205, Docket Entry No. 972, at 14) (citations omitted).

The Court concludes that this is an attempt to relitigate the denial of Movant's substitute

counsel motion.  As an issue that was raised and considered on appeal without highly exceptional

circumstances, habeas relief should be denied on this claim.

### d. Denial of right to counsel during custodial interrogation

Movant contends that he is entitled to habeas relief because he was improperly questioned after asserting his Miranda[5] right to counsel. The Government responds that this claim should be denied as procedurally defaulted having not been raised on direct appeal, citing Bousley v. United States, 523 U.S. 614, 620 (1998), and that Movant is attempting to relitigate the denial of his motion to suppress. Movant responds that he requested appellate counsel raise this issue on appeal.

Here, Movant's counsel filed a pre-trial motion to suppress his alleged confession (Case No. 3:03cr205, Docket Entry No. 290), which the Court denied. (Case No. 3:03cr205, Docket Entry No. 497). Yet, this issue was not included in Movant's appellate brief. Ogburn, 2008 WL 2906882 at *1 (Sixth Circuit listed the following issues raised by Movant on appeal: (1) admitting another co-defendant's guilty plea; (2) denying him counsel at a critical stage; (3) not suppressing wiretap evidence; (4) enhancing his sentence pursuant to 21 U.S.C. § 841; and (5) enhancing his sentence for prior convictions in violation of his Sixth Amendment right to jury trial."). Although Movant filed a separate pro se brief to address arguments not contained in the brief filed by appellate counsel, this specific issue was not contained in the pro se brief.[6] Movant has not demonstrated cause for the default and actual prejudice or that he is actually innocent. Thus, habeas relief should not be granted on this claim.

---

[5] Miranda v. Arizona, 384 U.S. 436 (1966).
[6] In his pro se brief, Movant did raise a similar issue that agents had an affirmative duty to provide Miranda warnings, there was no "objective" proof of the warnings, and "it was error for the district court to rule that Kenneth Crutcher did waive his Fifth Amendment rights." United States. v. Crutcher, No. 05-6362, 2007 WL 4982544 , *9-10 (appellant pro se brief). Because Movant was represented by counsel, the Sixth Circuit declined to address the claims raised in Movant's pro se brief. Ogburn, 288 Fed. App. at 238.

### e. **Brady** violation

Movant contends that he is entitled to habeas relief because the Government failed to produce an allegedly exculpatory telephone call between co-defendants Miguel Hernandez and Andrez Miranda. Put another way, Movant asserts prosecutorial misconduct by virtue of a Brady violation. According to Movant, this telephone call was where co-defendant Hernandez introduced co-defendant Miranda to Movant for cocaine. Movant argues this evidence would have been exculpatory to show that Hernandez offered false trial testimony and "[e]xcept for the false trial testimony, jurors would have acquitted Kenneth Crutcher." (Docket Entry No. 42, at 18). The Government responds that the Movant "points to nothing to indicate that any calls were withheld and not turned over to defense counsel" and Movant has not demonstrated the call would be exculpatory. (Docket Entry No. 21, at 7).

The Brady standard has been summarized as follows:

> The Court has held that "[t]here are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999); see also Kyles v. Whitley, 514 U.S. 419, 433 (1995). Prejudice (and materiality) is established by showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Strickler, 527 U.S. at 281 (quoting United States v. Bagley, 473 U.S. 667, 682 (1975); see also Cone v. Bell, ---U.S. ----, ----, 129 S.Ct. 1769, 1783 (2009). A reasonable probability is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682.

Brown v. Rapelje, Case No. 1:08cv151, 2009 WL 6608173, * 21 (W.D. Mich. May 26, 2009).

Here, presumably Movant contends that the call was favorable as impeaching. Yet, the Court cannot discern how this call would be favorable to Movant. The Sixth Circuit has already addressed the issue of prejudice to Crutcher based upon other alleged errors:

Finally, **in light of the overwhelming evidence presented against Crutcher at trial**, evidence of the agents' alleged perjured grand jury testimony is not likely to produce and acquittal if the case were retried. **The evidence at trial included wiretap tape recordings connecting Crutcher to the conspiracy, co-defendant Miguel Hernandez's testimony against Crutcher, and Crutcher's confession on the morning of his arrest.**

(Case No. 3:03cr205, Docket No. 1037) (emphasis added).

. . . **Crutcher cannot show that his substantial rights were violated by the admission of Miranda's guilty plea.** Given the overwhelming amount of testimony by other defendants in this case regarding the existence of a conspiracy and Miranda's leading role in it, Crutcher cannot seriously argue that jurors doubted either fact. **And Hernandez, Arrizon, Bradford, and Roberts all tied Crutcher to Miranda and described Crutcher's own role in the conspiracy.** Because Crutcher cannot show that the jury would have reached a different conclusion had evidence of Miranda's plea not been admitted, he has not established that his substantial rights were violated by any potential error [of admission of co-defendant's guilty plea].

Ogburn, 288 Fed. Appx. at 234-35 (emphasis added).

Thus, even assuming the existence of the recorded telephone call and non-disclosure by the Government, the Court concludes there was no Brady violation because Movant has not demonstrated that the evidence was favorable or that there was resulting prejudice. Therefore, habeas relief should not be granted on this claim.

### D. Conclusion

For the foregoing reasons, Movant's motion to vacate his sentence under 28 U.S.C. § 2255 (Docket Entry No. 1) should be denied.

An appropriate Order is filed herewith.

Entered on this the ___//___ day of January, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge